UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BERRY JOSEPH BLACKWELL,

    Petitioner,

    v.       CAUSE NO. 3:19-CV-827-RLM-MGG

WARDEN,

    Respondent.

## OPINION AND ORDER

Berry Joseph Blackwell, a prisoner proceeding without a lawyer, filed a habeas corpus petition challenging his 2018 conviction in Hamilton County for dealing in methamphetamine and habitual offender adjudication under cause number 29D01-1803-F2-1935. For the reasons stated below, the court denies his petition.

### I. BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct, unless Mr. Blackwell rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals set forth the facts underlying his conviction as follows:

> After responding to a report of a shot fired inside a residence during a domestic dispute, officers obtained a search warrant authorizing them to search the house for firearms, ammunition, and related items. When searching the basement in which Berry Blackwell was living, officers found, inter alia, over ten grams of methamphetamine, a digital scale, a chemical used as a cutting agent for methamphetamine, and a baggie corner. Blackwell was eventually tried for and convicted of Level 2 felony dealing in

methamphetamine, Level 4 felony methamphetamine possession, and Class C misdemeanor paraphernalia possession and was found to be a habitual offender. The trial court sentenced Blackwell to an aggregate sentence of forty years of incarceration.

Blackwell v. State, 126 N.E.3d 54 (Table), 2019 WL 2121109, at *1 (Ind. Ct. App. May 15, 2019).

Mr. Blackwell raised the following arguments on direct appeal: (1) the trial court erred under the Fourth Amendment and state law in admitting evidence seized from his residence pursuant to the search warrant; (2) the evidence was insufficient to support his conviction for dealing in methamphetamine; and (3) his sentence was inappropriately long under Indiana Appellate Rule 7(B). The Indiana Court of Appeals rejected these arguments and affirmed his conviction and sentence in all respects. The Indiana Supreme Court denied his petition to transfer, which raised the same claims.

Mr. Blackwell filed his petition for federal habeas relief raising the following claims: (1) the trial court erred under the Fourth Amendment and Indiana law in admitting evidence seized during the search of his residence; (2) the evidence was insufficient to find him guilty of dealing in methamphetamine; (3) the trial court erred under the Fourth Amendment and Indiana law in denying his pretrial motion to suppress; and (4) his 40-year prison term "is a most inappropriate sentence."

## II.   ANALYSIS

Mr. Blackwell's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a district court

2

to issue a writ of habeas corpus on behalf of a state prisoner "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain relief, the petitioner must meet the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." Hoglund v. Neal, 959 F.3d 819, 832 (7th Cir. 2020) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Id.* (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

A. Claims One and Three

Claims one and three are different iterations of the same claim: That the admission of evidence obtained from the search of Mr. Blackwell's residence violated his rights under the Fourth Amendment. (*See* ECF 1 at 3-4.) The respondent argues that Stone v. Powell, 428 U.S. 465 (1976), bars these claims.

In *Stone*, the U.S. Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. That is because the exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather, "it is a judicially created means of effectuating the rights secured by the Fourth Amendment." Brock v. United States, 573 F.3d 497, 499 (7th Cir. 2009) (internal citation and quotation marks omitted). The exclusionary rule was intended to deter violations of the Fourth Amendment by "removing the incentive to disregard it," but it has attendant costs, since it "deflects the truth-finding process and often frees the guilty." Stone v. Powell, 428 U.S. at 484, 490. Thus, the exclusionary rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486-87 (citation omitted). In habeas proceedings, the "contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 495.

4

Federal habeas courts can't consider Fourth Amendment claims that were fully and fairly litigated in state court. *Id.*; Monroe v. Davis, 712 F.3d 1106, 1114 (7th Cir. 2013). A habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim if: "(1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." Miranda v. Leibach, 394 F.3d 984, 997 (7th Cir. 2005). A federal habeas court's task is not to "second-guess the state court on the merits of the petitioner's claim, but rather to assure ourselves that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." Monroe v. Davis, 712 F.3d at 1114.

The record shows that Mr. Blackwell received a full and fair opportunity to litigate his Fourth Amendment claim in state court. Through his counsel, he filed a motion to suppress before trial. The trial court held an evidentiary hearing on the motion and issued a written order ruling on it. Mr. Blackwell raised his Fourth Amendment claim again on direct appeal, and the Indiana Court of Appeals thoroughly analyzed the facts and looked to applicable Fourth Amendment principles to resolve the claim. *See* Blackwell v. State, 2019 WL 2121109, at *2-*3. The court concluded that the police had probable cause to obtain the search warrant, and that under the warrant they had a right to search

5

the basement and a toolbox near Mr. Blackwell's bed, in which the drugs and other items were found.[1] *Id.*

It seems Mr. Blackwell would like this court to reconsider his arguments in favor of suppression and reach a different conclusion, but that is "a path that *Stone* closes." Hayes v. Battaglia, 403 F.3d 935, 939 (7th Cir. 2005). To the extent he is claiming that the admission of this evidence violated Indiana law, a claim that the state court violated state law is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); *see also* Earls v. McCaughtry, 379 F.3d 489, 495 (7th Cir. 2004) (a federal habeas court has no authority to "second-guess state courts in interpreting state law"). Claims one and three don't entitle Mr. Blackwell to federal habeas relief.

### B. Claim Two

Claim two challenges the sufficiency of the evidence supporting Mr. Blackwell's dealing in methamphetamine conviction. Under the Fourteenth Amendment Due Process Clause, a defendant can't be convicted unless the state proves all the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970).

---

[1] The warrant authorized police to search the residence "and its contents" for firearms, ammunition, firearm accessories, and "any evidence . . . that would lead a reasonable person to believe that a firearm had been recently fired." (ECF 7-5 at 81-82.) Mr. Blackwell appears to argue that the police had no right to search the toolbox, but as the state court concluded, a warrant that authorizes an officer to search a home for weapons or other contraband also provides authority to open containers in which the contraband might be found. United States v. Ross, 456 U.S. 798, 820-821 (1982).

When considering a sufficiency of the evidence claim on federal habeas review, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 319 (emphasis in original). The court's role is limited, and it is not permitted to reweigh the evidence or substitute its judgment for that of the finder-of-fact. *Id.*; Ford v. Ahitow, 104 F.3d 926, 938 (7th Cir. 1997).

To convict Mr. Blackwell of dealing in methamphetamine, the state had to prove that he knowingly possessed with intent to deliver at least ten grams of methamphetamine. IND. CODE § 35-48-4-1.1(a)(2), (e)(1). Under Indiana law, possession can be either actual or constructive. *Blackwell*, 2019 WL 2121109, at *5. As the Indiana Supreme Court has explained:

> There is . . . no requirement that the accused's actual possession of the contraband must be shown to have existed at precisely the same time as the law enforcement agency's discovery of the contraband. Put another way, conviction for possessory offenses does not depend on the accused being caught red-handed in the act by the police.

Wilburn v. State, 442 N.E.2d 1098, 1101 (Ind. 1982) (internal quotation marks omitted). It's enough to show that the defendant had "(1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." Gray v. State, 957 N.E.2d 171, 174 (Ind. 2011). Likewise, evidence of intent to deliver illegal drugs can be either direct or circumstantial. Montego v. State, 517 N.E.2d 74, 76 (Ind. 1987). The law lets the fact-finder infer intent to deliver "from surrounding circumstances[.]" Goodner v. State, 685 N.E.2d 1058, 1062 (Ind. 1997).

In rejecting Mr. Blackwell's argument that there was insufficient evidence to prove that he possessed the methamphetamine recovered from the residence, the Indiana Court of Appeals found as follows:

> [A]lthough Blackwell was living in the Residence, his control over it was not exclusive. The State was therefore required to establish additional circumstances pointing to Blackwell's knowledge of the methamphetamine's presence and its nature. We conclude that the State has done this. During a search of the Residence, officers found 10.93 grams of methamphetamine in the basement. There is evidence that Blackwell was the only person who lived in the basement and would come and go with his own key. The jury also heard testimony from the other residents that they were unaware of any methamphetamine in the basement. Blackwell's degree of control over the basement tends to show his knowledge of the methamphetamine's presence and its nature. Even more compelling, however, is the proximity to, and intermingling of his possessions with, the methamphetamine. The methamphetamine was found close to Blackwell's bed, and the officers accessed a locked compartment of the toolbox with a key from Blackwell's keychain. Inside the toolbox which contained the methamphetamine, officers also found the title for Blackwell's Subaru. Blackwell's toolboxes were under his control in his living space, and the one that contained the methamphetamine was locked and could only be unlocked with a key on his keychain. We conclude that these circumstances establish that Blackwell constructively possessed the methamphetamine in question.

Blackwell v. State, 2019 WL 2121109, at *6. Similarly, in rejecting his argument that the evidence was insufficient to prove that he had the requisite intent to deliver the methamphetamine, the court found as follows:

> [T]he amount of methamphetamine recovered was almost eleven grams. Hamilton County Sheriff's Sergeant Mike Howell testified that eleven grams was more than the amount a typical user would have, which would generally range from one-tenth of a gram up to three and one-half grams, an amount known as an "eight-ball[.]" The State also produced evidence that the officers recovered a digital scale, a cutting agent, and the ripped corner of a baggie. Sergeant Howell testified that drug dealers typically use a scale to weigh their product, a cutting agent to dilute it, and baggie corners to package it. We conclude that this evidence, when considered along with the

> amount, is sufficient to support an inference that Blackwell intended to deliver the methamphetamine in his possession. Blackwell notes that the State failed to produce evidence that he had actually delivered any methamphetamine to any other person. As mentioned, however, a dealing conviction can be supported by either direct or circumstantial evidence, and the record contains more than enough of the latter.

*Id.* (internal citations omitted).

Mr. Blackwell's petition argues that the evidence was insufficient because "the state never proved beyond a reasonable doubt that I ever even had possession of the drugs at any time or that a drug deal had ever occurred." (ECF 1 at 3.) Indiana law allows a guilty finding based on evidence of constructive possession, and lets the fact-finder infer intent to deliver from the surrounding circumstances. Goodner v. State, 685 N.E.2d at 1062; Wilburn v. State, 442 N.E.2d at 1101. Mr. Blackwell didn't have to be caught by police in the midst of a drug transaction to be found guilty of dealing illegal drugs. Wilburn v. State, 442 N.E.2d at 1101.

As outlined by the Indiana Court of Appeals, there is ample evidence in the record that Mr. Blackwell possessed methamphetamine with intent to deliver: more than 10 grams of methamphetamine was recovered near his bed in a toolbox; the key for the toolbox was on his keychain; and police found a cutting agent, a digital scale, and a ripped baggie, which an officer experienced in illegal drug transactions testified are commonly used to package methamphetamine for sale. Blackwell v. State, 2019 WL 2121109, at *1, *5-*6. This court can't reweigh the evidence and make its own determination of guilt or innocence. Instead, the court must consider the evidence in the record in the light most favorable to the

prosecution. Jackson v. Virginia, 443 U.S. at 319; *Ford*, 104 F.3d at 939. The court can't conclude that no reasonable fact-finder would have convicted Mr. Blackwell of dealing in methamphetamine. Mr. Blackwell hasn't established that the state court's resolution of this claim was objectively unreasonable, so the claim is denied.

### D.   Claim Four

In his final claim, Mr. Blackwell argues that his sentence was "most inappropriate" based on the "nature of the offense as well as the circumstances." (ECF 1 at 4.) He doesn't clearly articulate the source of law underlying this claim, but it appears that he is relying on Indiana law. *See* IND. APP. R. 7(B) (providing that appellate court may reduce a sentence on appeal if it finds "that the sentence is inappropriate in light of the nature of the offense and the character of the offender"). He raised the same challenge on direct appeal. *See* Blackwell v. State, 2019 WL 2121109, at *6-*7. A claim that the trial court violated state law in imposing his sentence isn't a matter for federal habeas review. *See* Estelle v. Gamble, 502 U.S. at 67-68. This claim doesn't entitle Mr. Blackwell to federal habeas relief.

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter,

10

agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). As already explained, Mr. Blackwell's claims don't entitle him to federal habeas relief. Three of his four claims are not subjects for federal habeas review and his final claim lacks merit under AEDPA standards. The court finds no basis to conclude that jurists of reason could debate the outcome of the petition or find a reason to encourage Mr. Blackwell to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

### III.   CONCLUSION

For the reasons set forth above, the petition (ECF 1) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on February 1, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
